**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:04cv479**

| | |
|---|---|
| In *re*: )<br>)<br>MOHIEDEN Z. OMAR, )<br>)<br>Debtor. )<br>──────────────────────────) | |
| )<br>)<br>)<br>MOHIEDEN Z. OMAR, )<br>)<br>Appellant, )<br>)<br>vs. )<br>)<br>METROLINA ORTHOPAEDIC )<br>and SPORTS MEDICINE CLINIC,)<br>P.A., JOSEPH ESTWANIK, M.D., )<br>and CHARLOTTE-　)<br>MECKLENBURG HOSPITAL )<br>AUTHORITY, )<br>)<br>Appellees. )<br>──────────────────────────) | **MEMORANDUM OF DECISION** |

**THIS MATTER** is before the Court on the Notice of Appeal of

Mohieden Z. Omar (Omar or Appellant), filed September 16, 2004  [Doc.

1], from the Judgment of United States Bankruptcy Judge George R.

Hodges, entered September 2, 2004 [Doc. 42, <u>In re: Omar</u>, 3:01bk30795 (Bky. Doc. 42)].[1]

## PROCEDURAL HISTORY

Omar filed a voluntary petition pursuant to Chapter 7 in the United States Bankruptcy Court for the Western District of North Carolina on March 23, 2001.  [Bky. Doc. 1].  On Schedule B of that Petition, Omar listed as personal property a "Personal injury claim pending - amount unknown."  [<u>Id</u>., at Schedule B, Sheet 2].  On Schedule C, Property Claimed as Exempt, Omar listed the personal injury claim in an unknown amount and specified that the exemption was claimed pursuant to N.C.G.S. §1C-1601(a)(8). [<u>Id</u>., at Schedule C.]  On Schedule F, Omar listed Metrolina Orthopedic Sports Medicine (Metrolina) as a creditor holding unsecured nonpriority claims in the amounts of $1,878.00 and $6,657.00.[2] [<u>Id</u>., at Schedule F, Sheets 13-14.]  Charlotte Mecklenburg

---

[1]Although the Record on Appeal has been submitted in manual form to this Court, the contents thereof have not been made individual exhibits or scanned into the record.  The Court will, therefore, refer to the contents of the Record on Appeal by referring to the document numbers filed in the Bankruptcy Court Record; that is, [Bky. Doc. 42].

[2]The record discloses that Joseph Estwanik, M.D. (Estwanik) works at Metrolina and the charges are for medical services provided by Dr. Estwanik.  [Exhibit A, attached to Bky. Doc. 40, supra].

Hospital Authority (Hospital) was not listed as a creditor, [Id., at Sheets 1-16], but "Carolinas Medical Center" was listed with claims aggregating $19,351.58. The Charlotte Mecklenburg Hospital Authority does business as the Carolinas Medical Center.[3]

On July 21, 2001, an Order of Discharge was filed. [Bky. Doc. 11]. Creditors were provided notice that they must file proofs of claim by December 19, 2001. [Bky. Doc. 16]. Metrolina was included in the notice; as was the Hospital under the name Carolinas Medical Center. [Id.] The Bankruptcy Trustee filed his Final Report and Proposed Distribution on September 19, 2003, and his Amended Final Report and Proposed Distribution on November 13, 2003.[4] [Bky. Docs. 29, 32]. Both reports contained the following:

> All property of the estate, except that allowed as exempt to the Debtor[], has been inventoried, collected, liquidated or abandoned. Any property not heretofore abandoned by the Trustee is scheduled on Form I, attached hereto, to be abandoned at the closing of this estate.

[Id., at 1].

---

[3] The Court takes judicial notice of this fact. See, Charlotte Mecklenburg Hospital Authority v. First Georgia Ins. Co., 340 N.C. 88, 455 S.E.2d 655 (1995). It would, however, have been the far better practice for the parties to have submitted something into the Record reflecting this fact.

[4] Omar did not include this document in his Designation of Record on Appeal but it was included within the Record on Appeal submitted to this Court.

On February 23, 2004, the Bankruptcy Court approved the Trustee's Amended Final Report. [Bky. Doc. 37].

On July 29, 2004, the Hospital moved for a determination of entitlement to the personal injury insurance settlement proceeds held in trust for Omar by his attorney, Lee Olive.[5]  [Bky. Doc. 39].  On August 6, 2004, Metrolina made a similar motion.  [Bky. Doc. 40].  Bankruptcy Judge George R. Hodges conducted a hearing on the motions on August 26, 2004. [Transcript, included in Record on Appeal].  Judge Hodges entered his decision on September 2, 2004, concluding that Metrolina, Estwanik and the Hospital held claims which were excepted from the Debtor's exemption and further that they were lien creditors who should be paid from the settlement proceeds for the medical services provided.  [Bky. Doc. 42].  Judge Hodges also awarded Metrolina the amount of $4,375.11 in attorneys fees.  The Hospital also sought attorneys fees [Bky. Doc. 39], and Judge Hodges' Order holds that the Hospital is entitled to such an award [Bky. Doc. 42], but there is nothing in the Record reflecting that the amount of such fees was ever determined or awarded.

---

[5] Although not clear from the Bankruptcy Court docket, Omar settled his personal injury action at some point prior to July 2004.

4

In response to that decision, Omar filed both a Notice of Appeal and a Motion for Stay Pending Appeal. [Bky. Docs. 44, 45, filed September 13, 2004]. Judge Hodges denied the motion on September 24, 2004. [Bky. Doc. 52]. On September 28, 2004, Metrolina, Estwanik and the Hospital moved to enforce the Bankruptcy Court's decision. [Bky. Docs. 54, 60]. In response, Omar moved to stay any proceedings to enforce the order and requested that his attorney be allowed to deposit the sum of money at issue with the Bankruptcy Court Clerk.[6] [Bky. Doc. 57]. Judge Hodges denied that motion as well. [Bky. Doc. 62].

His appeal having been filed on September 13, 2004, Omar renewed his motion before the United States District Court on October 3, 2004. [Doc. 2]. United States District Court Judge Graham C. Mullen granted the motion on October 5, 2004 and Omar posted bond in the amount of $35,142.70. [Doc. 3]. On October 27, 2004, Judge Mullen denied the motion to reconsider of Metrolina, Estwanik and the Hospital. [Doc. 6]. The bankruptcy case remains open due to the pendency of the appeal and Judge Mullen's stay.

Thereafter, the District Court appeal was reassigned on three

---

[6] The caption of the motion states that approval of a *supersedeas* bond is sought. [Bky. Doc. 57]. The body of the motion, however, states otherwise. [Id.].

occasions prior to reassignment to the undersigned in September 2007.

## STANDARD OF REVIEW

The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. In re Deutchman, 192 F.3d 457, 459 (4th Cir. 1999). The conclusions of law of the Bankruptcy Court are reviewed *de novo*. Id. Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed". In Re Green, 934 F.2d 568, 570 (4th Cir. 1991), *citing* In Re First Federal Corp., 42 B.R. 682 (Bankr.W.D.Va. 1984). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

This case did not involve any credibility determinations by the

Bankruptcy Court since only the argument of counsel was presented.  <u>See</u>,

*e.g.,*  <u>In re Tudor Associates, Ltd., II</u>, 20 F.3d 115, 119 (4th Cir. 1994);

Bankruptcy Rule 8013.


## FACTUAL BACKGROUND

The following facts form the basis for the Bankruptcy Court's

Judgment and are undisputed.  Omar received medical services from the

Hospital from June 9, 2000, through April 26, 2001, with the unpaid amount

due for medical services totaling $23,765.58.[7]  [Hospital's Motion, Bky.

Doc. 39, supra, at ¶¶1-2.].  "Sometime subsequent to filing of the

bankruptcy case, the Debtor, through his attorney, Lee Olive, received a

settlement amount to settle the personal injury claims." [Id. at ¶ 6].  The

Hospital claims to have given notice to Mr. Olive that it claims a lien

against the personal injury proceeds. [<u>Id</u>., at ¶¶6-7].  This is not disputed,

but neither Omar nor the Hospital has placed in the Record copies of any

notices of lien or copies of invoices submitted.  It is undisputed that the

Hospital charged Omar's attorney for copies of medical records and was

---

[7] As addressed *infra*, there is a discrepancy in the Record as to whether the unpaid amount is $23,765.58 or $23,843.12.  The Bankruptcy Court, however, found $23,765.58 to be the correct amount, and no party has challenged that figure.  This Court will, therefore, treat that as the correct amount left owing.

paid for those records. [Transcript at 5].

Omar received medical services from Metrolina and Estwanik from June 26, 2000, through December 21, 2000. [Bky. Doc. 40 at ¶2]. The total amount of medical services rendered by Metrolina and Estwanik was $8,545.00. [Id.]. Metrolina and Estwanik attached copies of statements for their services to the motion to determine their entitlement to a portion of the settlement proceeds. [Exhibit A, attached to Bky. Doc. 40]. Copies of these statements as well as Omar's medical records were sent to Omar's personal injury counsel on July 12, 2000, January 1, 2001, and September 3, 2003. [Bky. Doc. 40 at ¶7]. Although the record does not contain copies of transmittal letters to personal injury counsel, the copies of invoices in the record show that Omar's bills were sent in care of his attorney and there is no dispute among the parties about the fact that the bills were used in connection with the prosecution of his personal injury action. [Exhibit A to Bky. Doc. 40]. In addition, it is undisputed that written notices of lien claims were sent to Omar's counsel on July 12, 2000 and September 11, 2003, although copies of those notices have not been placed in the record. [Bky. Doc. 40, at ¶8]. The invoices attached to the motion in Bankruptcy Court show that Metrolina billed Omar's personal injury counsel $50.00 in

July 2000 for a narrative; that is, a narrative summary of Omar's medical records, and $10.00 in September 2003 for a medical records fee. [Exhibit A to Bky. Doc. 40]. Metrolina asserts that these charges are authorized by N.C. Gen. Stat. §90-411 but notes that it has not been paid for these charges. [Bky. Doc. 40 at ¶9; Transcript at 7].

Metrolina and Estwanik claim that while the personal injury claim was disclosed in the 2001 bankruptcy petition, the action thereon was not begun until April 4, 2003. [Id., at ¶10]. Sometime between April 2003 and July 2004, the case was settled, with the proceeds paid to Debtor's attorney.

## DISCUSSION

The Bankruptcy Court ruled as follows:

1. N.C. Gen. Stat. §44-49[8], as revised October 1, 2001, imposes a lien

---

[8] N.C. Gen. Stat. §44-49 (2007) provides in pertinent part:

(a) From and after March 26, 1935, there is hereby created a lien upon any sum recovered as damages for personal injury in any civil action in this State. This lien is in favor of any person [or] corporation ... to whom the person so recovering ... may be indebted for ... services rendered by any physician, ... or hospital ... in connection with the injury in compensation for which the damages have been recovered. ...

(b) [N]o lien provided for under subsection (a) of this section is valid with respect to any claims whatsoever unless the physician ... [or] hospital ...

on recovered funds in favor of medical providers without a requirement that the lien be registered with a clerk of court. [Bankruptcy Order, Doc. 42 at 4].

2. The current version of the statute applies in this case. [Id.].

3. The statute requires that the medical provider furnish a copy of the statements for services rendered and/or medical report without charge. [Id.].

4. N.C. Gen. Stat. §90-411[9] permits health care providers to impose fees for copying medical records and for providing a narrative summary of the patient's medical record. [Id.].

5. The Appellees imposed such fees in this matter and the Appellant claims that those charges invalidated the liens. [Id.].

---

furnishes, *without charge to the attorney as a condition precedent to the creation of the lien*, upon request to the attorney representing the person in whose behalf the claim for personal injury is made, an itemized statement, hospital record, or medical report for the use of the attorney in the negotiation, settlement or trial of the claim arising by reason of the personal injury, and a written notice to the attorney of the lien claimed. (Emphasis added).

[9] N.C. Gen. Stat. §90-411 provides in pertinent part:

A health care provider may charge a reasonable fee to cover the costs incurred in searching, handling, copying and mailing medical records to the patient or the patient's designated representative.    ...  If requested by the patient or the patient's designated representative, nothing herein shall limit a reasonable professional fee charged by a physician for the review and preparation of a narrative summary of the patient's medical record.

6.  The two statutes, N.C. Gen. Stat. §§44-49 & 90-411, should be construed in such manner as to give meaning to both provisions. [Id., at 5].  As a result, the *de minimis* charges of §90-411 are not prohibited by §44-49, which was intended to prevent a medical provider from extorting payment from a patient as a condition precedent to obtaining copies of his medical records.  [Id.].

7.  Moreover, pursuant to N.C. Gen. Stat. §1C-1601(8), the amounts due to the Appellees are not subject to the debtor's exemption; that is, these claims are excepted from the exemption and must be paid. [Id.].

8.  In any event, it would be inequitable to allow the Appellant to keep the entire personal injury settlement without payment to the medical providers who assisted in his recovery.  [Id., at 6].

9.  The Appellees were entitled to recover from Omar their attorneys' fees in connection with the motions.

The Appellant assigns numerous errors to the Bankruptcy Court's rulings, some of which were not presented below.  The Court will address in depth only the issues which were raised before the Bankruptcy Court. Adelphia Business Solutions, Inc. v. Abnos, 482 F.3d 602, 607 (2nd Cir.

2007) ("In general, a federal appellate court refrains from passing on issues not raised below."); In re Martin, 222 Fed. Appx. 360, 362 (5th Cir. 2007), *cert. denied* 128 S.Ct. 128 (2007) ("[W]e will not consider any issues on appeal that were not raised before the bankruptcy court."), *citing* In re Ginther Trusts, 238 F.3d 686, 689 & n.3 (5th Cir. 2001), *cert. denied* 534 U.S. 814, 122 S.Ct. 39, 151 L.Ed.2d 12 (2001); Snow v. Countrywide Home Loans, Inc. (In re Snow), 270 B.R. 38, 41 (D.Md. 2001) ("As an appellate court, this court 'applies the standard of review generally applied in [the] federal court [of] appeals' and will not generally consider issues not raised before the bankruptcy court."), *quoting*  Webb v. Reserve Life Ins. Co., 954 F.2d 1102, 1103-04 (5th Cir. 1992).

It is first noted that Omar made a vague argument on appeal, but not below, that the Bankruptcy Court had no jurisdiction to enter a ruling on the Appellees' motions.  At the time that the motions were made, the estate remained open; indeed, it has never been closed.  As noted in more depth *infra*, the Bankruptcy Court clearly had jurisdiction to determine whether the Appellees' claims were excepted from Omar's exemption and/or were valid liens.  28 U.S.C. §157(b)(2) (bankruptcy courts have jurisdiction to hear and determine matters concerning the allowance or disallowance of

exemptions from property of the estate and matters concerning the validity of liens);  Spartan Mills v. Bank of America, 112 F.3d 1251, 1256-57 (4th Cir. 1997), *cert. denied* 522 U.S. 969, 118 S.Ct. 417, 139 L.Ed.2d 319 (1997) (bankruptcy courts have jurisdiction if the outcome of the action could alter the debtor's rights or liabilities); In re Thompson, 313 B.R. 683 (M.D.N.C. 2004), In re Tosti, 276 B.R. 204 (S.D.Oh. 2001) (determining exemption in personal injury settlement proceeds).

Debtor first argues that he claimed the proceeds of the personal injury action as exempt from the claims of creditors, and that since the Appellees did not object to that claim of exemption by the "absolute deadline" of Bankruptcy Rules 4003(b) and 9006(b)(3) that the proceeds are no longer considered property of the bankruptcy estate, thus depriving the Bankruptcy Court of authority to award any portion of those funds to Appellees.  Debtor's argument, however, is not supported by the law.

The relevant portion of the exemption statute, N.C. Gen. Stat. §1C-1601(a)(8) provides that each resident of North Carolina

> who is a debtor is entitled to retain free of the enforcement of the claims of creditors ... [c]ompensation for personal injury ... *but such compensation is not exempt from claims for ... medical, ... hospital, and health care charges related to the accident or injury* giving rise to the compensation. (Emphasis added).

13

On Schedule C of his bankruptcy petition, Omar listed his personal injury

settlement as exempt *subject to this statute*.  He thus acknowledged that

his recovery was NOT exempt from the claims for medical and hospital

charges, which include the claims of Metrolina and the Hospital.  In re

Carpenter, 245 B.R. 39, 47 (E.D.Va. 2000), *affirmed* 252 B.R. 905 (E.D.Va.

2000), *affirmed* 36 Fed.Appx. 80 (4th Cir.2002).

As this Court said in In re Brank, 67 B.R. 1005 (W.D.N.C. 1986) ,

*affirmed sub nom* Sigmon v. Brank, 826 F.2d 1060 (table), 1987 WL 38385

(4th Cir. 1987).

> N.C.Gen.Stat. §1C-1601(a)(8) favors those creditors who have
> claims specifically related to the Debtors' personal injury, such
> as [medical] fees.  North Carolina has opted out of the federal
> exemptions and limits its residents to the exemptions under
> State law.  N.C.Gen.Stat. §1C-1601(f).
>
> . . .
>
> The question presented therefore is whether this exemption
> statute entitles the Appell[ees] to [their fees for medical
> services] without being displaced or invalidated by the
> intervening bankruptcy of [their patient], the Debtor[].
> Interpreting a statute requires that the Court look at the
> language of the statute itself and that language must ordinarily
> be regarded as conclusive.  Under §1C-1601(a)(8), a debtor's
> "compensation for personal injury" is exemptable from the
> "enforcement of the claims of his creditors."  No dollar limitation
> is imposed.  But, "such compensation is not exempt from the
> *claims for* ... charges related to the accident ... giving rise to the
> compensation," such as ... hospital or doctors' bills.  It is not in

dispute that Section 1C-1601(a)(8) was intended to afford protection to those debtors who receive personal injury compensation and to those creditors who have certain kinds of claims for services rendered specifically related to the personal injury.  Although a general creditor is prevented from reaching any part of personal injury compensation which the debtor claims is exempt, a creditor having one of the enumerated claims is entitled to reach that portion of the compensation attributable to his services related to the injury.  ...  [T]he policy behind the exception to the exemption is to protect those persons who helped the debtor receive personal injury compensation in the first place or rendered services for the personal injury.

. . .

[T]he [Bankruptcy] Code also states that states may "opt out" from federal exemptions and claim exemptions under state law.  If the State opts out, as is the case here, courts must accept the entire state exemption statute in order to remain consistent with the Code.  It appears that the [Appellant] does not want to be held by the exception to the exemption statute.

. . .

In conclusion, the Court is of the opinion that the North Carolina exemption statute should be read to permit removal from the estate those amounts which represent compensation for personal injuries.  Not all personal injury compensation is exempt; such compensation is not exempt from "claims for" ... medical, ... hospital, and health care charges related to the injury giving rise to the compensation.  Persons who have *claims for* ... medical charges are able to reach the personal injury compensation to the extent their ... medical charges relate to the injury giving rise to the compensation.

Id., 67 B.R. at 1006-07 (W.D.N.C. 1986) (emphasis in original), *affirmed*

*sub nom* Sigmon v. Brank, 826 F.2d 1060 (table), 1987 WL 38385 (4th Cir.

1987). "[T]he statute ... provide[s] that from such compensation [for personal injuries] those who ... provided care to the debtor for his injuries (medical, ... hospital, and health care) ... are entitled to be paid. The intention of the legislature to encourage those providing such services is obvious." Sigmon v. Brank, 826 F.2d at **2. "[T]his interpretation promotes the policy of the bankruptcy statute of favoring a fresh start for debtors." Id.; accord, In re Thompson, 313 B.R. at 685 ("The policy behind the exception to the exemption is to protect those persons who helped the debtor receive personal injury compensation in the first place or rendered services for the personal injury.").[10]

As such, Debtor's reliance on rules 4003 and 9006 is misplaced. Appellees did not miss any "absolute deadline" for objecting to the claim of exemption. Debtor asserted the exemption subject to the Appellee's claims (and subject to the claims of any other health care providers or attorneys who provided services relative to the tort claim). There was no

---

[10] Omar cites a comment by the Bankruptcy Court as showing that his decision was based on "equitable considerations." The Court stated in its opinion that "[i]t would be inequitable indeed to allow the Debtor to keep the portion of the settlement proceeds that are (sic) subject to medical liens in favor of the providers who helped him heal." [Bky. Doc. 42, supra., at 5-6]. This comment is nothing more than a restatement of the policy cited in the court decisions cited herein, decisions which the Bankruptcy Court followed. As a result, the Court finds it is unnecessary to address this issue.

objection the Appellees needed to file. Even though the proceeds may be exempt from the claims of other creditors, Debtor received those proceeds subject to such claims as the Appellees may have to those proceeds. Brank, 67 B.R. at 1006-07.

There is no dispute in this appeal that the Appellees' fees are *claims* for medical or hospital services provided to Omar to assist in his recovery from the personal injury which led to the settlement. The statute refers to "claims," and does not use the word "liens" to describe the exception. Likewise, the case law emphasizes the word "claims" without any discussion of or reference to liens. Thus, the impaired status, if any, of the Appellees' *liens* in no manner impairs the Appellees' *claims* pursuant to §1C-1601(a)(8). Under the clear and controlling law of the Fourth Circuit, the Bankruptcy Court had no choice but to pronounce such claims were to be paid from the personal injury compensation award. See also, In re Hernandez, 272 B.R. 178, 180 (D.Md. 2001) (discussing Maryland's exemption statute and stating, "[I]n these days of skyrocketing medical costs, the injured party incurs medical bills of over $100,000 and receives $100,000 in settlement of her claim. Under debtor's theory, were that person to file a bankruptcy case, the entire proceeds of the settlement

17

could be claimed as exempt so that the debtor could walk away with a windfall at the expense of those creditors who extended the medical care that made recovery possible.").

Having determined that Debtor's proceeds from his personal injury settlement are not exempt from the claims of Metrolina and the Hospital, we must determine whether the Appellees have preserved their claims against the Debtor and/or his proceeds.

The Bankruptcy Court determined that Metrolina and the Hospital had secured claims pursuant to North Carolina's health care provider lien statute, N.C. Gen. Stat. §44-49. Omar claims, however, that the Appellees' liens were invalidated when charges were made pursuant to N.C. Gen. Stat. §90-411 for copying the records and providing a narrative.[11] The wording of the statute in this regard is:

---

[11] Omar has listed as an issue on appeal whether the Bankruptcy Court properly found the current version of the statute applied. [Doc. 9, supra., at 2 ("Did the Bankruptcy Court err in concluding that the current version of N.C.Gen.Stat. §44-49, enacted on October 1, 2001, controls in determining the validity of written lien claims asserted by [Appellees] prior to October 1, 2001?")]. Prior to October 1, 2001, a medical services provider was obligated to file a claim with the clerk of court in which the personal injury action was pending within 30 days of initiation thereof. It is undisputed that none of the Appellees in this case did so. Omar argued to the Bankruptcy Court that this resulted in unperfected liens. Despite asserting this as an issue on appeal, Omar abandoned this argument in his brief. While the personal injury claim was disclosed in the 2001 bankruptcy petition, the action thereon was not begun until April 4, 2003. [Bky. Doc., supra., at ¶10]. Thus, by the time the action was actually brought, there was no longer a requirement that the claim be filed with the clerk

> no lien ... is valid with respect to any claims whatsoever unless the physician, ... hospital, or other person entitled to the lien furnishes, without charge to the attorney as a condition precedent to the creation of the lien, upon request to the attorney representing the person in whose behalf the claim for personal injury is made, an itemized statement, hospital record, or medical report for the use [in the action].

N.C. Gen. Stat. §44-49(b). It is not disputed that minimal fees were charged by the Appellees for copying medical records and providing a narrative summary by Estwanik. For example, copies of Omar's medical records were sent to Omar's personal injury counsel on July 12, 2000, January 1, 2001, and September 3, 2003. [Bky. Doc. 40 at ¶7]. The invoices attached to the motion in Bankruptcy Court show that Metrolina billed Omar's personal injury counsel $50.00 in July 2000 for a narrative; that is, a narrative summary of Omar's medical records, and $10.00 in September 2003 for a medical records fee. [Exhibit A to Bky. Doc. 40]. Likewise, the Hospital sent copies to counsel in October, 2001 and August 2003 along with charges in accordance with N.C. Gen. Stat. §90-411. [Transcript at 5]. It is undisputed that those fees were incurred pursuant to N.C. Gen. Stat. §90-411 which allows such reasonable charges.

"The cardinal principle of statutory interpretation is to ensure that

of court. To the extent the issue is not abandoned, it is rejected.

19

legislative intent is accomplished." Estate of Bullock v. C.C. Mangum Co., __ __ N.C.App. __, 655 S.E.2d 869, 871 (2008). "To determine legislative intent, we first look to the language of the statute." Id. Both N.C. Gen. Stat. §§44-49 and 90-411 govern the furnishing of medical records by medical providers. "'Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and **give effect to each**, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible.'" Id. (Emphasis added).

The two statutes, N.C. Gen. Stat. §§90-411 and 44-49 can be harmonized because they do not contradict one another. Both can be given their full effect. The health care provide lien statute, N.C. Gen. Stat. §44-49, states that no lien exists unless the health care provider claiming the lien "furnishes, without charge" the itemized statement, hospital records or medical report requested. To furnish "without charge" means exactly that - without charge. It does not mean without unreasonable charge, or without a charge in excess of that allowed by law. It means without any charge whatsoever. Claimants argue, and the Bankruptcy Court concluded, that since N.C. Gen. Stat. §90-411 authorizes the charges

imposed by the Claimants for providing the records, it must follow that the condition precedent to the lien under N.C. Gen. Stat. §44-49 must the charging of *no more than* the amount allowed under N.C. Gen. Stat. §90-411. Such construction of §44-49, however, does violence to the words used in the statute, while relying on nothing in §90-411 to support it. It is correct that the charges for the records are authorized by §90-411. There is nothing unlawful about the charges the Claimants imposed. Health care providers are entitled to charge such fees and receive them. In so doing, however, a health care provider chooses a course of action whereby the condition precedent to its lien must fail. Charging a fee for the records defeats the lien. If the provider chooses to charge for the records, N.C. Gen. Stat. §90-411 merely sets the cap on such charges. This is the only construction of both statutes that give *both* their full stated effect.

Metrolina argues that it may have charged the records fee, but it was never paid. This is of no consequence. The statute, §44-49, dictates that the condition precedent to the lien is providing the records "without charge" - not "without receiving payment of a fee therefor."

Having determine that Metrolina and the Hospital have no liens, we must now determine whether they acted to preserve their claims in any

form.  Carolinas Medical Center made a claim in the Bankruptcy in the amount of $23,998.58 [Claims Register, Bky. Doc.26].  It was allowed only as an unsecured claim[12] [Id.] and $155.46 of that amount was paid [Final Report of Trustee, Bky. Doc.32] leaving a balance of $23,843.12.[13] Nothing in the Record reflects the Debtor or any other party in interest objecting to the Hospital's claim or to the Trustee's determination to allow the claim.  The Hospital acted to assert and preserve its unsecured claim for the full balance owing.  Since the settlement proceeds are sufficient to satisfy the Hospital's claim and those proceeds are exempt from the claims of all other creditors in the bankruptcy, the Hospital is entitled to recover its fees from the settlement proceeds.

Metrolina, on the other hand, apparently did nothing to preserve its unsecured claim until filing its "Motion to Determine Entitlement to and Disbursement of Settlement Proceeds."  Metrolina does not appear on the

---

[12]  The Record and briefs do not explain the inconsistency between the Hospital filing a Proof of Claim reflecting an unsecured claim, and having been allowed only an unsecured claim, to which the Hospital did not object, and then moving the Bankruptcy Court for a disbursement based on an argument that its claim was actually secured. This, however, makes no difference in the Hospital's entitlement to payment.

[13] It is unknown from the Record why the Bankruptcy Court ordered the Hospital to be paid only $23,765.58, $77.54 less than the amount apparently owed.  Since no party has appealed from the Bankruptcy Court's determination of the amount, the amount as found by the Bankruptcy Court must stand.

claims Register [Bky. Doc.26] as having made a claim that was either allowed or disallowed. The Court can only glean from the Record that Metrolina never filed a Proof of Claim and chose to rely on its claimed lien. In fact, in its Motion, Metrolina relies entirely upon its lien and does not even make an argument that it has an alternative basis for recovering by way of an unsecured claim.

All is not lost for Metrolina, however. Its Motion to recover from the settlement proceeds [Bky. Doc.40] appears to meet all the requirements for an informal proof of claim. It is (1) in writing, (2) contains a demand on the debtor's estate, (3) evidences an intent to hold the debtor liable for the debt, (4) is filed with the Bankruptcy Court, and (5) is equitable under the circumstances. See, In re Nikoloutsos, 199 F.3d 233 (5th Cir. 2000); Reliance Equities, Inc. v. Valley Fed. Sav. & Loan Ass'n, 966 F.2d 1338 (10th Cir. 1992). The deadline for filing Proofs of Claim was December 19, 2001 [Bky. Doc.16], but 11 U.S.C. §726(a)(2)(C)(ii) allows a tardily filed claim to be accepted in a Chapter 7 bankruptcy, provided it is filed in time to permit payment of the claim. Since the funds have not been disbursed and remain with the Court, Metrolina's Motion can be received as a tardily filed informal proof of claim. See, In re Romano, 59 Fed. Appx. 709, 713

(6th Cir. 2003). This matter will be remanded to the Bankruptcy Court for a determination as to whether Metrolina's Motion [Bky. Doc.40] will be received as such. If it is, then Metrolina is entitled to payment from the proceeds, just as the Hospital is. If it rejected by the Bankruptcy Court, then Metorlina's claim against the proceeds is barred.

This leaves the issue of the award of attorneys fees. The Bankruptcy Court awarded Metrolina attorneys fees in the amount of $4,375.11, and determined that the Hospital is entitled to attorneys fees, but there is nothing in the Record reflecting that a particular amount of such fees was awarded to the Hospital. [Bky. Doc.42 at 6]

Both sides acknowledge the general premise that "under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees." Big Yank Corp. v. Liberty Mut. Fire Ins. Co., 125 F.3d 308, 313 (6th Cir. 1997); Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). All parties also recognize that the principal exception to this rule is when a court uses its inherent authority to award fees because one party has litigated in bad faith. Big Yank, 125 F.3d at 313; Williams v. Professional Transp. Inc., 294 F.3d 607 (4th Cir. 2002). Unfortunately, the Bankruptcy

Court did not explain the reasoning behind his determination that the Appellees were entitled to an award of attorneys' fees.  As a result, this Court, as the reviewing court, is unable to ascertain the basis on which the Bankruptcy Court made the award.  Big Yank, 125 F.3d at 313. Particularly in light of the defect in the liens claimed by Appellees, which formed the fundamental basis of their claims, it cannot reasonably be said that the Debtor litigated in bad faith.  In fact, he may yet prevail with regard to Metrolina's claim.  For those reasons and because an award of attorneys fees is the exception, and because the record is devoid of reference to either statutory or inherent authority, the Court has no choice but to vacate the award of attorneys fees.  Id.

For the reasons stated herein, the Judgment of the Bankruptcy Court is **AFFIRMED IN PART, REVERSED IN PART AND REMANDED**, as follows.  The Judgment of the Bankruptcy Court awarding the Charlotte Mecklenburg Hospital Authority the amount of $23,765.58 from the proceeds of Debtor's personal injury settlement is affirmed; the Judgment of the Bankruptcy Court awarding Metrolina Orthopaedic and Sports Medicine Clinic, P.A. and Joseph Estwanik the amount of $8,545.00 from the proceeds of Debtor's personal injury settlement is reversed and that

matter is remanded for further proceedings not inconsistent with this opinion; the Judgment of the Bankruptcy Court awarding Metrolina attorneys fees in the amount of $4,375.11 and determining that Charlotte Mecklenburg Hospital Authority is entitled to an award of attorneys fees is reversed and vacated.

Signed: March 26, 2008

Martin Reidinger
United States District Judge